IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


MARIAN ALLEN and FELIX FENDERSON                    PLAINTIFFS

VS.                         CIVIL ACTION NO. 2:07-cv-34(DCB)(JMR)

CITY OF LAUREL, IN ITS OFFICIAL CAPACITY;
MARY ANN HESS, IN HER OFFICIAL AND INDIVIDUAL
CAPACITY; DEMOCRATIC EXECUTIVE COMMITTEE;
PEGGY O'CONNELL, CHAIRMAN, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY; CYNTHIA MANN BRELAND;
JACQUELINE EVANS; PEGGY McCANN; JONES COUNTY
DEMOCRATIC EXECUTIVE COMMITTEE; LARRY COLEMAN,
CHAIRMAN, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY; MISSISSIPPI DEMOCRATIC PARTY; WAYNE
DOWDY, CHAIRMAN, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY; CIVIL RIGHTS DIVISION, CHRIS HERREN,
UNITED STATES DEPARTMENT OF JUSTICE                  DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendants United States
Department of Justice, Civil Rights Division, and Special
Litigation Counsel Chris Herren ("the Federal Defendants")'s motion
to dismiss **(docket entry 14)**, and on defendants City of Laurel and
Mary Ann Hess's motion to dismiss **(docket entry 25)**. Having
carefully considered the motions and responses, the memoranda and
the applicable law, and being otherwise fully advised in the
premises, the Court finds as follows:

On May 3, 2005, the plaintiffs herein, Marian Allen and Felix
Fenderson, along with Harold J. Blakely and Jimmie Stanfield, filed
a pro se complaint in this court (Cause No. 2:05-cv-118(KS)(MTP))
against the City of Laurel Municipal Democratic Executive Committee
("LMDEC"), Peggy Smith O'Connell (Chairman), Mary E. Booth, Cynthia

Felecia Mann Breland, Jacqueline "Chip" Evans, and Peggy McCann; the Jones County Democratic Executive Committee, Larry Coleman (Co-Chairman); Mary Ann Hess, Linda C. McNeil, and Terri Martin Smith (City of Laurel Clerks); Eric Clark (Secretary of State); Jim Hood (State Attorney General), Reese Partridge (Special Assistant Attorney General), and Mike Landford (Deputy Attorney General). The plaintiffs in the 2005 action were previously members of the LMDEC. They brought suit on behalf of themselves and purportedly on behalf of the LMDEC.[1]

Under Mississippi law, party executive committees such as the LMDEC are political party entities which determine whether candidates who desire to run for political office in that party's primary elections are qualified for the office. See Miss. Code Ann. § 23-15-309(4). The party executive committee's official involvement in the election process ends with the conclusion of the primary election. According to the May 3, 2005 Complaint, plaintiff Blakely, as Chairman of the LMDEC, sent a handwritten letter to seven candidates who had filed qualifying papers with the City of Laurel for various political offices, notifying them that they had been disqualified from running as Democrats in the May 3,

---

[1] The plaintiffs' 2005 Complaint created the anomalous situation of the LMDEC being both a plaintiff and a defendant in the same suit. As admittedly "former" members of the LMDEC, the plaintiffs would not have had standing to bring suit in its name. They apparently sought to do so based on their allegation that they had been "overthrown" and replaced by usurpers. Complaint, ¶ 8 (Cause No. 2:05-cv-118).

2005 Democratic primary.  One of the candidates was Laurel Mayor Susan Boone Vincent, who was running as an Independent, not a Democrat.  Four of the other candidates were incumbent city councilmen, and the other two were non-incumbents.  Blakely's letter informed the candidates that the LMDEC had determined that Mayor Vincent had a conflict of interest, that the four incumbent Councilmen had "misused or abused" their offices, and that the two non-incumbent candidates had failed to resign from their jobs (such as school crossing guard) before qualifying.

Prior to sending the March 22, 2005 letter, Blakely had met with officials from the Mississippi Attorney General's office and requested an official opinion on whether the LMDEC had legal justification to disqualify the seven candidates.  The request was assigned to defendants Landford and Partridge, who issued an official non-binding advisory opinion that the LMDEC had no legal justification for disqualifying the seven candidates.  The Complaint goes on to allege that sometime between March 23 and April 1, 2005, other members of the LMDEC, assisted by the Jones County Democratic Committee, the City Clerks for the City of Laurel, and the seven disqualified candidates "overthrew" plaintiffs Blakely, Stanfield, Allen and Fenderson and removed them from the LMDEC.

In their May 3, 2005 Complaint, the plaintiffs asserted violations of state and federal elections laws and statutes,

including the federal civil rights act and the voting rights act, as well as other state law claims. They sought reinstatement to the LMDEC or a special court-ordered primary election, along with a letter of apology and unspecified damages for defamation. An Amendment to the Complaint was filed on December 8, 2005, naming additional defendants Carolyn Harper, Commissioner of Municipal Elections, Wayne Dowdy, Chairman, Mississippi Democratic Party, and Keelan Sanders, Member, Mississippi Democratic Party.

The defendants in that lawsuit moved for dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The court granted the motions to dismiss in Orders dated October 21, 2005, June 27, 2006, and October 11, 2006. On November 9, 2006, plaintiff Blakely filed a notice of appeal to the Fifth Circuit Court of Appeals. The appeal was dismissed for want of prosecution on March 26, 2007. <u>See</u> Entry of Dismissal, Fifth Circuit Court of Appeals, filed as docket entry 63 in Cause No. 2:05-cv-118.

The present action was commenced by plaintiffs Allen and Fenderson, <u>pro</u> <u>se</u>, with the filing of an original complaint on December 29, 2006, in the Circuit Court of Jones County, Mississippi. The original complaint seeks relief under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, the First Amendment and the Due Process Clause of the United States Constitution, as well as "the state claim of removing a United States citizen from

a ballot." Complaint, pp. 1-2. As relief, the plaintiffs seek damages in "an unspecified amount." Complaint, p. 2. The action was removed to this Court on February 13, 2007, by the United States Department of Justice, Civil Rights Division, and Special Litigation Counsel Chris Herren, on the basis of federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and removal statutes 28 U.S.C. §§ 1441, 1442, and 1446. On February 26, 2007, the plaintiffs amended their complaint. The Amended Complaint deletes Jacqueline Evans and Peggy McCann as defendants.

The Federal Defendants move to dismiss the Amended Complaint. In response, the plaintiffs request that the Court send this case back to the Jones County Circuit Court. Plaintiffs' Response, pp. 2-3. The Court construes this request as a motion to remand. However, under 28 U.S.C. § 1447©, "a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." The plaintiffs' request for remand to state court was made more than 30 days after the Federal Defendants filed their Notice of Removal, and is untimely.

The Federal Defendants removed this action under 28 U.S.C. §§ 1441, 1442 and 1446 asserting an absolute right of removal as a federal agency and officer asserting federal defenses. <u>See</u> <u>Willingham v. Morgan</u>, 395 U.S. 402, 406 (1969). Even if the plaintiffs' request for remand were timely, it would not be well

taken because removal of this case to federal court was required.
Federal law provides for removal of civil actions commenced in
state court when the "United States or any agency thereof or any
officer ... of the United States or of any agency thereof, [is]
sued in an official or individual capacity for any act under color
of such office."  28 U.S.C. § 1442(a)(1).  "The purpose of the
removal statute is to prevent federal officers or persons acting
under their direction from being tried in state courts for acts
done within the scope of their federal employment."  Peterson v.
Blue Cross/Blue Shield of Texas, 508 F.2d 55, 58 (5ᵗʰ Cir. 1975).
"[T]he removal statute is an incident of federal supremacy, and ...
one of its purposes [is] to provide a federal forum for cases when
federal officials must raise defenses arising from their official
duties."  Id. (quoting Willingham, 395 U.S. at 405).  "[T]he right
of removal under § 1442(a)(1) is made absolute whenever a suit in
a state court is for any act 'under color' of federal office,
regardless of whether the suit could originally have been brought
in a federal court." Willingham, 395 U.S. at 406.  Courts are to
interpret the removal statute broadly to include all cases where
federal officers can raise "a colorable defense" arising out of
their responsibilities to enforce federal law.  Id. at 406-07; see
also Peterson, 508 F.2d at 58.  In this case, the Federal
Defendants have been sued for their decision not to take
enforcement action, and they have raised colorable federal

6

defenses, including sovereign immunity and qualified immunity. Under these circumstances, the Federal Defendants' right of removal is absolute.

Removal to federal court is also appropriate because the claims alleged by the plaintiffs involve federal questions. "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). The plaintiffs' original complaint in this case alleged federal law claims against the defendants, including violations of Section 5 of the Voting Rights Act, and violations of the Plaintiffs' constitutional rights to due process and the First Amendment. The plaintiffs' Amended Complaint also asserts federal law claims, specifically that "these Defendants violated Federal [sic] Secured Statutory Rights and the Plaintiffs' 14th and 15th Amendment [sic] of the Constitution." Amended Complaint, p. 6.

The Federal Defendants move for dismissal pursuant to Fed.R.Civ.P 12(b)(1)(lack of subject matter jurisdiction) and 12(b)(6)(failure to state a claim upon which relief can be granted). The plaintiffs allege violations of federal statutory rights and the Fourteenth and Fifteenth Amendments, and seek only money damages for these alleged violations. Amended Complaint, p.

6.  From other language in the Amended Complaint and the original complaint, it appears that the federal statutory rights to which the plaintiffs refer are the preclearance requirements of Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c, although the plaintiffs do not cite to the correct statutory language in the Amended Complaint.  Amended Complaint, pp. 2-5.  The Amended Complaint does not identify any decision by the United States to preclear or not preclear any actions taken by local authorities to remove the plaintiffs from the ballot.  In addition, the Justice Department represents that it has not received any submission from the plaintiffs relating to this issue.  Federal Defendants' Motion to Dismiss, p. 5 fn.8.

The allegations regarding Mr. Herren are also less than clear. The Amended Complaint appears to allege that Mr. Herren was sent a letter by former local party chairman Harold Blakely, and that Mr. Herren did not take any action in response to that letter.  The plaintiffs do not specify the subject matter of the letter, other than a vague allusion to "the determination of the Laurel Municipal Executive Committee."  Amended Complaint, p. 5.  The Amended Complaint cites to an Exhibit 11, which is not a letter but rather the March 22, 2005 meeting notes of the Laurel Municipal Democratic Executive Committee, with a notation added: "cc: U.S. Dept of Justice Civil Rights Voting Section Atty Chris Herron."  Amended Complaint, Ex. 11.  There is no request in this document asking the

Justice Department to take any action.

Regarding the Federal Defendants, the Amended Complaint further alleges that, "[a]fter contacted [sic] Mr. Herren several times by phone the issued [sic] was never addressed," without specifying who contacted Mr. Herren, or the specific issue that purportedly was never addressed. Amended Complaint, p. 5. Construed broadly, the Amended Complaint appears to allege that the United States Department of Justice, through Chris Herren, did not take any enforcement action to prevent the plaintiffs' removal from the ballot. The Amended Complaint does not specifically indicate in the caption, or in the description of Mr. Herren on page 5, whether he is being sued in his official or individual capacity, or both. However, the last page of the Amended Complaint states that the plaintiffs "request an unspecified amount of damages from each defendant personally, professionally, and individually." Amended Complaint, p. 6.

Typically, a claim brought under Section 5 of the Voting Rights Act must be heard and determined by a court of three judges. 42 U.S.C. § 1973c. The Court does not construe the plaintiffs' Amended Complaint to allege a proper Section 5 claim, however, as the plaintiffs seek only money damages, which are not available under Section 5 of the Voting Rights Act. <u>Vondy v. White</u>, 719 F.2d 1265, 1266 (5th Cir. 1983). As a result, this Court may decide the Federal Defendants' motion to dismiss without a three judge panel.

A single judge can also dismiss a purported action under Section 5 without convening a three-judge court if there is no subject matter jurisdiction, such as where the plaintiffs lack standing. <u>See Gonzalez v. Automatic Empl. Credit Union</u>, 419 U.S. 90, 97, 100 (1974)("A three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts."); <u>Wertheimer v. Federal Election Comm.</u>, 268 F.3d 1070, 1072 (D.C. Cir. 2001). Further, the Fifth Circuit has held that "where § 5 claims are 'wholly insubstantial' and completely without merit, such as where the claims are frivolous, essentially fictitious, or determined by prior case law, a single judge may dismiss the claims without convening a three-judge court." <u>League of United Latin American Citizens (LULAC) of Texas v. State of Texas</u>, 113 F.3d 53, 55 (5th Cir. 1997); <u>United States v. Saint Landry Parish School Board</u>, 601 F.2d 859, 863 (5th Cir. 1979)("[A] three judge court is not required [under Section 5] if the claim is wholly insubstantial or completely without merit."); <u>Broussard v. Perez</u>, 572 F.2d 1113, 1118 (5th Cir. 1978).

For purposes of the Federal Defendants' Rule 12(b)(6) motion, "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." <u>Miller v. Stanmore</u>, 636 F.2d 986, 988 (5th Cir. 1981). However, dismissal is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). The Court accepts "all well-plead factual allegations as true" and construes those allegations "in the light most favorable to the plaintiff." <u>United States ex rel. Willard v. Humana Health Plan of Texas, Inc.</u>, 336 F.3d 375, 379 (5th Cir. 2003)(internal quotations omitted). Conclusory allegations "will not suffice to prevent a motion to dismiss," and "neither will unwarranted deductions of fact." <u>Id</u>. (internal citations and quotations omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. at 1965 (internal citations, quotations, and footnote omitted). <u>See</u> <u>also</u> <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir. 1993)("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

After a defendant challenges jurisdiction by filing a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden of establishing the existence of subject matter jurisdiction. <u>Paterson v. Weinberger</u>, 644 F.2d 521 (5th Cir. 1981); <u>Menchaca v. Chrysler Credit Corp.</u>, 613 F.2d 507, 511 (5th Cir. 1980). A motion

to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss., 143 F.3d 1006 (5th Cir. 1998). The Court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). Likewise, the Court is obliged to construe pro se pleadings liberally and under a "less stringent standard" than those prepared by counsel. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, Article III standing "cannot be inferred argumentatively from averments in the pleadings ... but rather must affirmatively appear in the record." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).

The authority of this Court under Article III of the Constitution extends only to actual "cases" or "controversies." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004). Thus, standing is "the threshold question in every federal case." Warth, 422 U.S. at 498; Newdow, 542 U.S. at 11 ("[T]he party bringing the suit must establish standing."). To establish Article III standing, a plaintiff must plead three elements: (1) "injury in fact," (2) a "causal connection" between the injury and the challenged act, and (3) that the injury "likely" would be "redressed by a favorable decision." Lujan v. Defenders of

<u>Wildlife</u>, 504 U.S. 555, 560-61 (1992)(citations and internal quotations omitted).  "The party invoking federal jurisdiction bears the burden of establishing these elements." <u>Id</u>. at 561.  In the standing context, the Supreme Court "presume[s] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 342 n.3 (2006)(quoting <u>Renne v. Geary</u>, 501 U.S. 312, 316 (1991)).  An "injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560 (internal quotations and citations omitted).  That injury "must affect the plaintiff in a personal and individual way." <u>Id</u>. at 560 n.1.

Assuming that the plaintiffs' removal from the ballot constitutes an injury in fact sufficient to confer standing, the plaintiffs must further allege that this injury is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>DaimlerChrysler</u>, 547 U.S. at 333 (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984)). The Amended Complaint fails to identify any specific action taken by the Federal Defendants that caused the alleged injury in this case — the decision by party officials to remove the plaintiffs from the ballot.  In fact, the Federal Defendants were under no obligation to take any action.  <u>See</u> <u>Heckler v. Chaney</u>, 470 U.S.

821, 831 (1985)(a federal agency's choice not to take action under a particular civil statute is "a decision generally committed to an agency's absolute discretion"). Without a "causal connection" between the alleged injury and the actions of the Federal Defendants, the plaintiffs lack a necessary element to establish standing.

Furthermore, the plaintiffs fail to establish that the requested relief against the Federal Defendants will correct the alleged violation. The plaintiffs are only seeking money damages, and such relief is not available for violations of Section 5. See 42 U.S.C. §§ 1973c & 1973j(d); see also Vondy, 719 F.2d at 1266 (5th Cir. 1983); Foreman v. Dallas County, Texas, 990 F. Supp. 505, 512 (N.D. Tex. 1998). The Federal Defendants have no role in the conduct or the administration of local Democratic Party elections in Mississippi, and local jurisdictions or the State are responsible for submitting voting changes under Section 5. Therefore, any relief against the Federal Defendants would not redress the alleged injury — the decision by party officials to remove the plaintiffs from the ballot.

In Reaves v. United States Dept. of Justice, 355 F. Supp. 2d 510 (D. D.C. 2005)(three judge court), several individual citizens sued federal defendants, among others, over the failure by local officials to submit a voting change for preclearance under Section 5. In dismissing the claim against the federal defendants, the

Court explained:

> In this case, it is not the allegedly unlawful conduct of
> the federal defendants but that of the State of South
> Carolina that allegedly caused injury to plaintiffs.
> Under Section 5 of the Voting Rights Act, it is the
> responsibility of the "state or subdivision" to obtain
> preclearance for any change to voting procedures. 42
> U.S.C. § 1973c. This Court could grant no relief <u>vis a
> vis</u> the federal defendants that would redress plaintiffs'
> alleged injury; therefore, no cognizable case or
> controversy exists with respect to those defendants.

<u>Id</u>. at 515. Likewise, plaintiffs Allen and Fenderson have not

established that relief can be granted against the Federal

Defendants that would redress their alleged injury. This Court

therefore lacks subject matter jurisdiction over the claims against

the Federal Defendants.

In addition, the United States has not waived its sovereign

immunity for the plaintiffs to sue the Federal Defendants. It is

elementary that "[t]he United States, as sovereign, is immune from

suit save as it consents to be sued ..., and the terms of its

consent to be sued in any court define the court's jurisdiction to

entertain the suit." <u>United States v. Sherwood</u>, 312 U.S. 584, 586

(1941). A waiver of sovereign immunity "cannot be implied but must

be unequivocally expressed." <u>United States v. King</u>, 395 U.S. 1, 4

(1969). An individual cannot sue the United States, its agencies,

or its officers in their official capacities, without an express

waiver of sovereign immunity. <u>See</u> <u>Drake v. Panama Canal

Commission</u>, 907 F.2d 532, 534 (5th Cir. 1990); <u>United States v.

Mitchell</u>, 445 U.S. 535, 538 (1980); <u>United States v. Testan</u>, 424

U.S. 392, 399 (1976); Sherwood, 312 U.S. at 586; Dotson v. Griesa, 398 F.3d 156, 177 (2nd Cir. 2005)("The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities.").

The waiver of sovereign immunity cannot be implied; it must be unequivocally expressed, Testan, 424 U.S. at 399, and strictly construed in the United States' favor. McMahon v. United States, 342 U.S. 25, 27 (1951); see also Chapa v. United States Dep't of Justice, 339 F.3d 388, 390 (5th Cir. 2003). To the extent the plaintiffs have sued defendant Herren in his official capacity, a suit against a government employee in his or her official capacity is considered nothing more than an action against the government itself. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

The essence of the allegations against the Federal Defendants is that an attorney employed by the Department of Justice failed to take enforcement action to prevent the removal of the plaintiffs from the ballot. Although the plaintiffs allege violations of the preclearance requirements of the Voting Rights Act (i.e., Section 5), and the Fourteenth and Fifteenth Amendments, see 2007 Am. Compl. at pp. 2, 6, they identify no specific waiver of the Federal Defendants' sovereign immunity that would allow for subject matter jurisdiction of claims against the Federal Defendants. Citation to constitutional provisions, by itself, is insufficient to waive the United States' sovereign immunity. The United States has not

waived its sovereign immunity for constitutional violations.  FDIC
v. Meyer, 510 U.S. 471, 473 (1994) (declining to find an implied
cause of action for damages against federal agencies for
constitutional violations).  Further, a suit against Mr. Herren in
his official capacity is barred because the plaintiffs cannot sue
an officer of the United States in his or her official capacity
without an express waiver of sovereign immunity. See Drake, 907
F.2d at 534.

Even if the plaintiffs' claim could be construed as a
constitutional claim under the Supreme Court's ruling in Bivens v.
Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S.
388 (1971), this type of action cannot be brought against an agency
of the Federal government, Meyer, 510 U.S. at 473, nor can a Bivens
action be maintained against a Federal officer such as Mr. Herren
in his official capacity.  See Witherspoon v. United States, 838
F.2d 803, 804 (5th Cir. 1988)(recounting history of case involving
qualified immunity issue and noting that "official capacity" claims
had been dismissed earlier on sovereign immunity grounds).

It is unclear whether the plaintiffs intended to sue defendant
Herren in his individual capacity.  See Am. Compl., pp. 5-6.
However, construing the Amended Complaint as naming Mr. Herren in
his individual capacity, the Court shall address the issue of
whether Mr. Herren is entitled to qualified immunity.
"[G]overnment officials performing discretionary functions

17

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Federal Defendants point out that Mr. Herren was not in a position of authority to make enforcement decisions for the Voting Section at the time that the plaintiffs were removed from the ballot. Mr. Herren was a trial attorney at the time of the plaintiffs' removal; he subsequently was named as a Special Litigation Counsel, a position that reports to the Chief of the Voting Section. Mr. Herren could not authorize the filing of an enforcement action. See 42 U.S.C. § 1973j(d); 28 C.F.R. § 0.50(a) (delegating authority to the Assistant Attorney General in charge of the Civil Rights Division).

Money damages are not available for violations of Section 5. See 42 U.S.C. §§ 1973c & 1973j(d); Vondy, 719 F.2d at 1266; Foreman, 990 F.Supp. at 512. Therefore, any possible claim for money damages would have to be based on a constitutional violation. In assessing qualified immunity for constitutional claims, courts must analyze several factors. First, the Court must consider whether the facts alleged would establish that Mr. Herren's conduct violated a constitutional right. Saucier, 533 U.S. at 201. The second question is, assuming that Mr. Herren's actions violated the plaintiffs' constitutional rights, were those rights so "clearly

18

established" that in the light of pre-existing law the unlawfulness of the challenged action was apparent? _Id_. at 201-02. A government official such as Mr. Herren is immune unless "the law clearly proscribed the actions" taken. _Mitchell_, 472 U.S. at 528. An official whose conduct was objectively reasonable in light of established law at the time of the action is protected by qualified immunity. _Felton v. Polles_, 315 F.3d 470, 477 (5th Cir. 2002). The plaintiffs bear the burden to rebut a qualified immunity defense by showing that the alleged wrongful conduct by the government official violated clearly established law. _Id_.

On the last page of their Amended Complaint, the plaintiffs allege generally that "these Defendants violated Federal [_sic_] Secured Statutory Rights and the Plaintiffs' 14th and 15th Amendment [_sic_] of the Constitution." Amended Complaint, p. 6. The allegations in the Amended Complaint describing Mr. Herren's actions, however, fail to identify or otherwise establish any constitutional provision violated by Mr. Herren. _See_ Amended Complaint, p. 5. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." _Saucier_, 533 U.S. at 201.

As discussed above, the plaintiffs' only contention against Mr. Herren is that he did not respond to a letter and did not take action following several phone calls apparently relating to the

plaintiffs' removal from the ballot. Mr. Herren did not have authority to take enforcement action, and his employer, the Department of Justice, has the discretion to decide when and whether enforcement action is necessary under the Voting Rights Act. In the previous 2005 lawsuit, the individual municipal defendants sued in their individual capacity were dismissed where the plaintiffs had also "made no allegations of violation of specific constitutional rights other than the general allegations that the plaintiffs' rights under 'state and federal elections law statutes, civil rights act [and the] voting/voting rights act' were violated by their removal from the LMDEC." Order of October 21, 2005 (Cause No. 2:05-cv-118), pp. 5-6. In this action, the plaintiffs have not shown that Mr. Herren violated any clearly established constitutional right of which a reasonable person would have known; thus, the plaintiffs cannot satisfy the threshold qualified immunity inquiry, and defendant Herren is entitled to qualified immunity from suit.

In addition, the Court finds that the Federal Defendants acted within their prosecutorial discretion in enforcing federal voting rights laws. The plaintiffs allege that the Federal Defendants, and specifically Mr. Herren, never took action to prevent their removal from the ballot. Amended Complaint, p. 5. Decisions by the Federal Defendants regarding enforcement of federal law, however, are protected by the principle of prosecutorial

discretion.  The Supreme Court has recognized that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." <u>Chaney</u>, 470 U.S. at 831.  The Court recognized "the general unsuitability for judicial review of agency decisions to refuse enforcement" for many reasons, including the fact that

> the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.

<u>Id</u>.  "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  <u>Id</u>. at 831-32; <u>see also Wayte v. United States</u>, 470 U.S. 598, 607 (1985)(finding that "the Government retains 'broad discretion' as to whom to prosecute" in the criminal context); <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996)(the government's law enforcement positions carry with them a presumption of regularity).  The plaintiffs fail to state a claim based on the Federal Defendants' failure to take action in a local election dispute.

The plaintiffs have also failed to state a claim upon which relief can be granted under Section 5 of the Voting Rights Act. Under Section 5, Mississippi and its political subdivisions are

required to obtain a determination from either the Attorney General of the United States or the United States District Court for the District of Columbia, that changes in voting practices and procedures do not have the purpose, and will not have the effect of discriminating on the basis of race or color, before those changes can be implemented.  42 U.S.C. § 1973c; <u>see</u> <u>also</u> 28 C.F.R. 51, App.

The Attorney General's determinations under Section 5 are not subject to judicial review.  <u>Morris v. Gressette</u>, 432 U.S. 491, 504-05 (1977); <u>see</u> <u>also</u> <u>Harris v. Bell</u>, 562 F.2d 772, 773-74 (D.C. Cir. 1977); <u>Reaves</u>, 355 F.Supp.2d at 514 ("[T]he Supreme Court has clearly held that Congress intended the Attorney General's decision whether or not to object to a proposed voting change under Section 5 to be discretionary and unreviewable.").  In addition, "Congress expressly reserved for consideration by the District Court for the District of Columbia or the Attorney General ... the determination whether a covered change does or does not have the purpose or effect of denying or abridging the right to vote on account of race or color." <u>Perkins v. Matthews</u>, 400 U.S. 379, 385 (1971); <u>United States v. Saint Landry Parish School Board</u>, 601 F.2d 859, 863 (5th Cir. 1979); <u>see</u> <u>also</u> 42 U.S.C. § 1973*l*(b) ("No court other than the District Court for the District of Columbia shall have jurisdiction to issue any declaratory judgment pursuant to section 1973b or 1973c of this title or any restraining order or temporary or permanent injunction against ... any action of any Federal officer

or employee pursuant hereto.").

In their present action, the plaintiffs do not seek injunctive relief or a declaratory judgment, but only "an unspecified amount of damages from each defendant." Amended Complaint, p. 6. Money damages are not available under Section 5. See 42 U.S.C. §§ 1973c, 1973j(d); see also Vondy, 719 F.2d at 1266 ("[S]ection 1973c does not authorize the award of damages ...."). "The aim of the § 5 enforcement mechanism is not compensation. There is no hint that voters, candidates, or office holders are entitled to recover monetary losses associated with a violation of the right to vote." Foreman, 990 F.Supp. at 512. The relief sought by the plaintiffs cannot be granted. The Federal Defendants would not be proper defendants, even if the plaintiffs sought declaratory or injunctive relief under Section 5. The Federal Defendants have no role in the conduct of the municipal election or the qualification of candidates for the ballot, and are not proper defendants in actions seeking to require state or local officials to obtain preclearance of actions alleged to require Section 5 review. See Reaves, 355 F.Supp.2d at 515; see also Coward v. Dickens, 2005 WL 1330491 at *1 (W.D. La. May 13, 2005)(dismissing the United States as a defendant for failure to state a claim). The plaintiffs have failed to state a claim against the Federal Defendants under Section 5 of the Voting Rights Act.

Having determined that the plaintiffs' complaint fails to

state a cause of action against the United States Department of Justice, Civil Rights Division, and Chris Herren, said defendants shall be dismissed from this action with prejudice. The Court now turns to the remaining defendants, to determine if the complaint states a cause of action under federal law against any of them.

The remaining defendants, with the exception of the City of Laurel, were defendants in Cause No. 2:05-cv-118. On October 21, 2005, all federal claims against defendant Mary Ann Hess and two other employees of the City of Laurel Clerk's Office were dismissed for failure to state a claim. Specifically, the court found that the plaintiffs failed to make any specific factual allegations of violations of federal law. The court declined to exercise supplemental jurisdiction over the plaintiffs' state law claims, and dismissed the state law claims against defendants Hess, McNeil and Smith without prejudice. Order of October 21, 2005, p. 9; Judgment of October 21, 2005, p. 2.

On June 27, 2006, all claims against Wayne Dowdy, Chairman, Mississippi Democratic Party, et al., were dismissed. The plaintiffs' complaint was found to be "frivolous and totally without merit," and the plaintiffs were cautioned "that continued meritless assertions which could be deemed as merely harassing conduct could subject each of them to monetary sanctions and injunctive relief." Order of June 27, 2006, p. 2.

On October 11, 2006, an order and judgment were entered

dismissing all claims against defendants Peggy O'Connell, Cynthia Mann Breland, Jacqueline Evans, Peggy McCann, the Jones County Democratic Executive Committee, and Larry Coleman. The court specifically found:

> The plaintiffs' Complaint and Amended Complaint contain only conclusory and confounding statements making it impossible to determine what the defendants are alleged to have done which would give rise to liability to the plaintiffs or how any actions of these defendants damaged the plaintiffs. Taking all assertions by the plaintiffs as true, they have not pled any set of facts which would lead to liability on the part of any of these defendants.

Order of October 11, 2006, p. 3.

To the extent that the plaintiffs' present lawsuit asserts claims against the remaining defendants under federal law, this Court finds that such claims are barred by the doctrine of res judicata. Res Judicata is a doctrine of public policy designed to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and encourage reliance on adjudication. Little v. Eastover Bank for Savings, 126 B.R. 861 (N.D. Miss. 1991).

Although only defendants Mary Ann Hess and the City of Laurel ("the City Defendants") have raised the preclusion defense, this Court may raise the issue sua sponte as to all the remaining defendants if the Court "is on notice that it has previously decided the issue[s] presented .... This result is fully consistent with the policies underlying res judicata: it is not

25

based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." _Arizona v. California_, 530 U.S. 392, 412 (2000)(quoting _United States v. Sioux Nation_, 448 U.S. 371, 432 (1980)(Rehnquist, J., dissenting)). _See_ _also_ _Russell v. SunAmerica Sec., Inc._, 962 F.2d 1169, 1172 (5th Cir. 1992)(res judicata may be raised _sua_ _sponte_ because the court may not ignore the legal effect of uncontroverted facts or decline to consider application of controlling rules of law to dispositive facts).

In _Mowbray v. Cameron County, Texas_, 274 F.3d 269 (5th Cir. 2001), the Fifth Circuit recognized two limited exceptions to the general rule that res judicata is an affirmative defense that must be pleaded, not raised _sua_ _sponte_. The first exception arises where both actions were brought before the same court. _Id_. at 281 (citations omitted). The second arises "where all of the relevant facts are contained in the record before [the court] and all are uncontroverted." _Id_. (citation omitted). As in _Mowbray_, both exceptions apply to the case _sub_ _judice_. The underlying facts are uncontroverted, and both actions were brought in the same court.

There are additional factors present which weigh in favor of _sua_ _sponte_ consideration in this case. The plaintiffs cannot claim surprise or prejudice, nor have they been denied the chance to argue the estoppel issue, since the City Defendants raised the preclusion defense in their motion to dismiss, and the issue has

been fully briefed by the parties.  See <u>Mowbray</u>, 274 F.3d at 281-82.

The Fifth Circuit has adopted a four part test for determining whether a subsequent claim is barred by the doctrine of res judicata.  For a prior judgment to preclude a subsequent action on the basis of res judicata: (1) the same parties must be involved in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases.  <u>Nilsen v. City of Moss Point</u>, 701 F.2d 556, 559 (5th Cir. 1983)(<u>en banc</u>).

The plaintiffs do not dispute that their federal law claims were dismissed by a final judgment in Cause No. 2:05-cv-118.  In fact, in their response to the City Defendants' motion to dismiss, the plaintiffs admit that they filed their 2005 action in federal court "arriving from this same circumstances [<u>sic</u>]."  Plaintiffs' Response, p. 2.  They assert that in dismissing the federal action, the federal court allowed them to pursue their state law claims in state court.  Plaintiffs' Response, p. 2.  They claim that they filed their present suit in the Circuit Court of Jones County "for Negligent and Emotional Distress in an Election Case."  Plaintiffs' Response, p. 1.  They further claim that "[t]he United States Department of Justice came in and removed a case filed in State Court for Negligence and Emotional Distress against the

Defendants." Plaintiffs' Response, p. 3. Nowhere in their response do the plaintiffs claim that they are pursuing any federal claims against the remaining defendants. In fact, they now state that in filing their action in state court, they were "not attempting to bite off the Federal half of the apple again but [were] attempting to nipple [sic] at the other half of the apple in state court." Plaintiffs' Response, p. 3.

Res judicata prevents the plaintiffs from re-litigating their federal claims against the remaining defendants. All of the parties in the present suit were involved in the earlier federal action, with the exception of the City of Laurel. However, strict identity of parties is not a prerequisite for satisfying the res judicata test. Russell v. SunAmerican Securities, Inc., 962 F.2d 1169, 1172 (5th Cir. 1992). All that is required is the existence of privity between the non-party defendants and the named defendant. Id. at 1173. In Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279 (5th Cir. 1989), the Court found employees to be in privity with their employer under the facts of that case. In doing so, the Fifth Circuit followed the decisions of several other circuits, which it summarized as follows:

> The doctrinal basis for these decisions has varied according to their fidelity to traditional mutuality or privity concepts, but they share a common practical thread. Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special

28

relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief – the courts have denied the plaintiff's second bite at the apple.

Id. at 1288.  In Anderson v. City of Dallas, 2004 WL 912564 (N.D. Tex. April 28, 2004), the district court for the Northern District of Texas applied the Lubriozol factors and found that where the plaintiff sought to hold the city liable for conduct of its employees, the city employees were in privity with the City of Dallas for res judicata purposes.  Id. at *2.  This Court finds that the same analysis applies here, where the plaintiffs seek to hold the City of Laurel liable for the conduct of its employee Mary Ann Hess.  The City of Laurel is therefore considered in privity with defendant Hess for res judicata purposes.

The Court also finds that the claims asserted in this action are identical to the claims disposed of in the prior proceeding. To determine whether the same claims are involved in two actions, the Fifth Circuit applies the transactional test of the Restatement (Second) of Torts § 24.  Eubanks v. F.D.I.C., 977 F.2d 166, 171 (5th Cir. 1992).  Under this approach, "the critical issue is not the relief requested or the theory asserted but whether [the] plaintiff bases the two actions on the same nucleus of operative facts." Robinson v. National Cash Register Co., 808 F.2d 1119, 1124-25 (5th Cir. 1987).  In other words, it is the factual predicate of the claims asserted, not the legal theories upon which the plaintiff

relies, that is the focus of the inquiry.  <u>Eubanks</u>., 977 F.2d at
171.  Res judicata bars "all claims that were <u>or could have been</u>
advanced in support of the cause of action on the occasion of its
former adjudication, ... not merely those that were adjudicated."
<u>Nilsen</u>, 701 F.2d at 560 (emphasis in original).  The plaintiffs'
current suit is based on the same nucleus of operative fact as
their earlier action.  Since res judicata not only precludes re-
litigation of issues which were raised in prior litigation, but
also bars litigation of issues which could have and should have
been raised in the first action, the federal claims against all
defendants are barred by res judicata and shall be dismissed.

With regard to state law claims, res judicata serves to bar
these claims against defendants Mississippi Democratic Party and
Wayne Dowdy since they were dismissed with prejudice in the prior
action.  <u>See</u> Judgment of June 27, 2006, Cause No. 2:05-cv-118.  The
doctrine also serves to bar all state law claims against defendants
Democratic Executive Committee, Peggy O'Connell, Cynthia Mann
Breland, Jacqueline Evans, Peggy McCann, the Jones County
Democratic Executive Committee, and Larry Coleman.  <u>See</u> Judgment of
October 11, 2006, Cause No. 2:05-cv-118.  However, the Judgment of
October 21, 2005, dismissed the state law claims against Mary Ann
Hess without prejudice, because the court did not exercise
supplemental jurisdiction over those claims.  "A judgment that
expressly leaves open the opportunity to bring a second action on

specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion." Anderson, 2004 WL 912564 at *2 (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4313, at 106 (1981)); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990)(a "dismissal ... without prejudice" is a dismissal that does not "operat[e] as an adjudication upon the merits" and, thus, does not have res judicata effect). Thus, there is no preclusion of the plaintiffs' state law claims against Mary Ann Hess and the City of Laurel.

In light of the dismissal of the federal defendants, the dismissal of all federal claims against the remaining defendants, and the dismissal of all state law claims against defendants Democratic Executive Committee, Peggy O'Connell, Cynthia Mann Breland, Jones County Democratic Executive Committee, Larry Coleman, Mississippi Democratic Party and Wayne Dowdy, the Court shall decline to exercise supplemental jurisdiction over the remaining state law claims against defendants Mary Ann Hess and the City of Laurel, pursuant to 42 U.S.C. § 1367(c)(3), and those claims shall be remanded to the Circuit Court of Jones County, Mississippi. Accordingly,

IT IS HEREBY ORDERED that United States Department of Justice Civil Rights Division and Special Litigation Counsel Chris Herren ("the Federal Defendants")'s motion to dismiss **(docket entry 14)** is

GRANTED, and all claims against said defendants are DISMISSED WITH PREJUDICE;

FURTHER ORDERED that all claims against defendants Mississippi Democratic Party and Wayne Dowdy are DISMISSED WITH PREJUDICE;

FURTHER ORDERED that all claims against defendants Democratic Executive Committee, Peggy O'Connell, Cynthia Mann Breland, Jacqueline Evans, Peggy McCann, Jones County Democratic Executive Committee, and Larry Coleman are DISMISSED WITH PREJUDICE;

FURTHER ORDERED that defendants City of Laurel and Mary Ann Hess's motion to dismiss **(docket entry 25)** is GRANTED as to the plaintiffs' federal claims, and all federal claims against said defendants are DISMISSED WITH PREJUDICE;

FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims against defendants City of Laurel and Mary Ann Hess, and said claims shall be remanded to the Circuit Court of Jones County, Mississippi. A separate Order of Remand shall follow.

SO ORDERED, this the 11th day of August, 2009.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE